## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOHN C. WOOSLEY,**

          **Plaintiff,**

v.                                                          **CIV No. 14-302 LH/LAM**

**MARIA CONTRERAS-SWEET,**
**Administrator, UNITED STATES**
**SMALL BUSINESS ADMINISTRATION,**

          **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment and Supporting Memorandum (ECF No. 35).  The Court, having considered the motion, response and reply briefs and relevant legal authorities, for the reasons that follow, concludes that Defendant's motion is hereby **granted, resulting in dismissal of this case in its entirety.**

## I.  OVERVIEW

Plaintiff is currently employed by the Small Business Administration ("SBA"), serving as District Director for the New Mexico District Office.  On January 25, 2013, Plaintiff filed a Formal Complaint of Discrimination with the SBA's Office of Diversity, Inclusion and Civil Rights ("ODI&CR").  On March 15, 2013, the ODI&CR sent a letter to Plaintiff acknowledging receipt of his Formal Complaint and notifying him that certain issues had been accepted for

investigation.  On December 31, 2013, the ODI&CR issued its Final Agency Decision, finding

no discrimination on all claims.

On March 28, 2014, Plaintiff filed a Complaint in this Court, making allegations under

Title VII of the Civil Rights Act of 1963, as amended by the Civil Rights Act of 1991, 42 U.S.C.

§ 2000e, *et seq.*  (Compl. ECF No. 1).  Specifically, in this litigation he makes the same claims

that he raised with the ODI&CR, namely disparate treatment due to reverse race and gender

discrimination (Counts I and II), retaliation (Count III), and a hostile work environment (Count

IV).

Plaintiff's claims of disparate treatment (gender and racial reverse discrimination) arise

from these actions:  (1) a rating of "Below Expectations" on his FY 2011 Final Review, issued

on December 6, 2011;  (2) issuance of a letter of warning ("LOW") dated February 13, 2012;  (3)

placement on a Performance Improvement Plan ("PIP") on May 14, 2012;  (4) denial of a within-

grade increase on September 7, 2012;  and (5) suspension for conduct unbecoming of a

supervisor for seven calendar days, effective November 26, 2012.

Plaintiff's hostile work environment claim is that the above-described discriminatory

acts, including on-going workplace harassment, were sufficiently severe and pervasive to alter

the terms and conditions of his SBA employment.

Plaintiff's retaliation claim is that after he participated in protected activity, by reporting

unfair treatment to SBA management, his supervisors took adverse employment actions against

him that include but are not limited to:  (1) unjustifiable substandard performance evaluations;

(2) denial of a pay increase;   (3) placement on a performance improvement plan;   (4)

inappropriate disciplinary action;  and, (5) the creation of a hostile work environment.

## A.  RELEVANT FACTUAL BACKGROUND[1]

In this lawsuit Plaintiff has sued Maria Contreras-Sweet, the administrator of the SBA. His immediate supervisor is Yolanda Olivarez, Regional Administrator, Region VI.  (Woosley Dep. at 5, Deft's Ex. A, ECF No. 35-1)(hereafter "DEX A").  Ms. Olivarez's office is in Fort Worth, Texas.  (*Id.*).  Eugene Cornelius, Deputy Associate Administrator for Field Operations, is the reviewing official for Plaintiff's annual performance review.  (Cornelius Decl. ¶ 7, Deft's Ex. B, ECF No. 35-2)(hereafter "DEX B").  Mr. Cornelius's office is in Washington, D.C. (*Id.* ¶ 1).

Ms. Olivarez gave Plaintiff a rating of "5" on his FY  2010 performance review, which signified "extraordinary" performance and the highest rating possible.  (Olivarez Dep. at 87, Pltf's Ex. 4, ECF No. 39-4).

### 1.  May 4, 2011 Incident and Subsequent Management Inquiry

On May 4, 2011, Plaintiff was involved in an incident that occurred while meeting with a number of female SBA employees at the New Mexico District Office.  (DEX A at 12).[2]  Shirley Bailey, an SBA Business Development Specialist, was a witness to this incident.  Both parties to this litigation rely in part upon her testimony, as well as that of Mary Drobot and Plaintiff, in describing what occurred.  Some of the details about what happened during this incident are in dispute.  Ms. Bailey testified that Plaintiff flew into the doorway of her office, that spittle had formed on the side of his mouth, that his teeth were clenched, and that he started jabbing his finger in Mary Drobot's face and then ultimately back at Ms. Bailey.  (Bailey Dep. at 25, Deft.'s Ex. C, ECF No. 35-6)(hereafter "DEX C") Further, she testified that Plaintiff had his finger so close to Ms. Drobot that she had to lean back, that he was in Ms. Drobot's personal space, that it became a fearful situation, and that Ms. Bailey could see the fear in Ms. Drobot's  eyes.  (*Id*. at

---

[1] Except as otherwise noted, the following asserted facts are undisputed.
[2] Eugene Cornelius testified that he was not aware of any similar type of behavior from Plaintiff, either before or after the May 4, 2011 incident.  (Cornelius Dep. at 30-31, Pltf's Ex. 3, ECF No. 39-3).

26).  Ms. Drobot testified that Plaintiff raced down to Ms. Bailey's office and started yelling at her and that he got his finger so close to her that she had to back off.  (Drobot Dep. at 8-9, Deft.'s Ex. D, ECF No. 35-7)(hereafter "DEX D").

Plaintiff categorically denies that any spittle formed on his face on May 4, 2011, that he jabbed his finger in Ms. Drobot's face, and that he ever threatened or yelled at any employee.  (Woosley Aff. ¶ 3, Pltf's Ex. 1, ECF No. 39-1).[3]    Furthermore, he refers the Court to Ms. Bailey's description of a time when Ed Cadena was jabbing his finger in the air, while in the presence of Ms. Bailey. (DEX C at 25-26).  Plaintiff states that Mr. Cadena is Hispanic and that he received no adverse consequences of his outburst, as described by Ms. Bailey.  (*Id.*)[4]

On October 31, 2011, Plaintiff's supervisor, Yolanda Olivarez, conducted a site visit to the New Mexico District Office because of complaints she received from a number of employees.  (Olivarez Decl. ¶¶ 14-16, Deft's Ex. E, ECF No. 35-8)(hereafter "DEX E").  During her visit, according to her notes, employees complained to her that they were not being allowed to do any outreach or networking; they expressed great concerns regarding Plaintiff's temper and abusive outbursts; and many stated that Plaintiff had created excess anxiety and nervous tension in the workplace by yelling at employees.  (Attachment 6 to DEX E).[5]

Ms. Olivarez testified that she saw a difference in how Plaintiff treated women and that she saw resistance from him when two capable women applied for a position.  (Olivarez Dep. at

---

[3]  Plaintiff testified that he suffers from a documented, involuntary speech problem that causes him to speak aggressively and in elevated tones of voice at times.  (Woosley Dep. at 36, Pltf's Ex. 2, ECF No. 39-2).  These symptoms surface when he becomes nervous and/or stressed out.  (Woosley Aff. ¶ 8, Pltf's Ex. 1, ECF No. 39-1).

[4]  Plaintiff also asserts in his affidavit that he "raised complaints of harassment and unfair treatment of myself by Yolanda Olivarez to Eugene Cornelius on several occasions.  Despite the fact that Mr. Cornelius stated to me that he would handle and look into these complaints, there is no evidence that he did anything at all with respect to addressing my complaints of harassment." (Woosley Aff. ¶ 10. Pltf's Ex. 1, ECF No. 39-1).

[5]  Plaintiff does not dispute the content of the notes referenced in Attachment 6 to DEX E, but does dispute that employees were in fact not  allowed to do outreach or networking, that he had abusive outbursts of temper in the work place, and that he yelled at employees.  (Woosley Dep. at 68, Pltf's Ex. 2, ECF No. 39-2).

60, Pltf's Ex. 4, ECF No. 39-4).  She testified that she knows of two women who were hired as deputies.  (*Id.* at 61).

On November 9, 2011, Eugene Cornelius authorized a Management Inquiry to investigate claims raised of a hostile work environment in the New Mexico District Office, related to complaints to Yolanda Olivarez about Plaintiff's management style.  (DEX B ¶¶ 10-12).  On November 15 and 16, 2011, Gaye Walker, EEO Specialist, ODI&CR, and Krista Madison, Attorney Advisor, Office of General Counsel, interviewed Plaintiff, Deputy District Director Susan Chavez, and seven staff members.   On November 29, 2011, Ms. Walker interviewed Shirley Bailey by telephone, and on December 21, 2011, Ms. Walker interviewed SBA District Counsel by telephone.  (Walker Decl. ¶¶ 13-15, Deft's Ex. F, ECF No. 35-14)(hereafter DEX F).  No further investigation was conducted.  (Olivarez Dep. at 38-39, Pltf's Ex. 4, ECF No. 39-4).

On April 24, 2012, the Management Inquiry was concluded and a Report was issued.  (DEX F ¶ 19; Attachment 1 to DEX F).  Under the "Summary and Recommendations," the Report stated in part:

- It is clear that there are some managerial matters that need immediate attention in the New Mexico District Office.  Clearly the biggest problem identified is the poor management style of the District Director, John Woosley.
- There should be zero-tolerance for any further employee unrest in the District Office and he should be held fully accountable for repairing the damage done resulting from his management style.  He either needs to be retrained or neutralized for damage-control purposes.
- Mr. Woosley has a number of issues in the District Office as evidenced by the responses given by his employees, but if one were to take his testimony at face value, he is completely unaware that any issues exist.  There is a big gap in perception between him and his employees that needs to be reconciled before anyone can move forward.
- The Reported concluded, among other things, that testimonial evidence supported the conclusion that "Harassment in the workplace is sufficiently severe and pervasive as to create a hostile work environment."
- The Report recommended, among other things, that Plaintiff receive mandatory and immediate supervisory training, to include but not limited to communication and conflict

management skills, and his removal from a supervisory position if his behavior does not improve within three (3) months of receiving training, to remain consistent for at least two (2) years.

### 2.  FY 2011 Performance Final Review

In November 2011, Plaintiff received an overall rating of "Below Expectations" for his FY 2011 Final Review.  (Compl ¶ 19; Woosley Dep. at 38, Pltf's Ex. 2, ECF No. 39-2).  This rating was based upon the October 2011 meetings that Ms. Olivarez had with employees at the New Mexico office – meetings that were outside the timeframe of the October 1, 2010 to September 30, 2011 period for review of Plaintiff's performance.  (Olivarez Dep. at 88, Pltf's Ex. 4, ECF No. 39-4).

Plaintiff testified that in November 2011, after he received this evaluation, he called Mr. Cornelius, told him that he was concerned about it and thought it was unfair; that Mr. Cornelius asked him to wait until the review was completed before he took any action regarding the 2011 review; and, that Mr. Cornelius told Plaintiff that he would look at it once the management review was complete and determine if he thought any modification was appropriate.  (Woosley Dep. at 37-41 and 78-79, Pltf's Ex. 2, ECF No. 39-2).  Later in his deposition, Plaintiff testified that Mr. Cornelius told him that he should not do anything to contest the Final Review until the Management Inquiry was completed.  (*Id.* at 78-79).  As noted above, the Management Inquiry was completed on April 24, 2012.

In his Declaration, Mr. Cornelius denied having this conversation with Plaintiff  (DEX B ¶ 9).  Mr. Cornelius did tell an EEO counselor that he had spoken with Plaintiff regarding his Final Review; that he did not recall Plaintiff telling him that he was going to file an EEO complaint because of his performance rating; and that Mr. Cornelius told Plaintiff that he wanted to see the results of the Management Inquiry Report before addressing his rating.  Further, Mr. Cornelius stated that Ms. Olivarez provided a copy of the Management Inquiry to him, and that it

6

justified the performance rating Plaintiff received.  Mr. Cornelius stated there was no further

discussion with Plaintiff.  (EEO Counselor's Report at 8, Pltf's Ex. 7, ECF No. 39-7).

Plaintiff testified that Human Resources Specialist Kendall Gamber told him that there

was no time limit during which he could contest his rating.  (Woosley Dep. at 82-83, Pltf's Ex. 2,

ECF No. 39-2).  He testified that in July of 2012 he reiterated his complaint to Mr. Cornelius that

he was being treated unfairly by Ms. Olivarez and that this was affecting his ability to do his job.

(*Id.* at 41-42).  Mr. Cornelius denied that this second conversation took place.  (DEX B ¶ 17).

Plaintiff did not initiate contact with an SBA EEO Counselor within 45 days of his

receipt of the Final Review.  (Compl. ¶ 7).[6]

### 3.  Letter of Warning ("LOW")

On February 13, 2012, Ms. Olivarez issued a Letter of Warning to Plaintiff.  (DEX  A at

53; Attachment 7 to DEX E).  The LOW stated, in part:  "This letter is not designed to be

construed as disciplinary in nature and will not be made part of your Official Personnel Folder."

(*Id.*).  The LOW was neither a disciplinary action nor an adverse action as defined by SBA's

Standard Operating Procedure 37 52 2 "Discipline and Adverse Actions."  (Gamber Decl. ¶ 15,

Deft's Ex. H, ECF No. 35-20)(hereafter DEX H).  Plaintiff lost no pay or benefits as a result of

the issuance of the LOW.  (DEX A at 122).  His grade and responsibilities remained the same

(*Id*. at 122-123).  Plaintiff did not initiate contact with an SBA EEO Counselor within 45 days of

his receipt of the LOW.  (*Id*. at 53).

### 4.  Performance Improvement Plan ("PIP")

On May 14, 2012, Ms. Olivarez issued a letter to Plaintiff, notifying him that his

performance in Element 2, Leadership and Management of his Personal Business Commitment

---

[6] Woosley disputes the materiality of this fact, arguing that the reason he did not meet the 45-day requirement for exhaustion of remedies is because Mr. Cornelius requested that he not file an EEO complaint until the Management Inquiry was completed.  (Woosley Dep. at 40, Pltf's Ex. 2, ECF No. 39-2).

Plan, was at the "Fails to Meet Expectations Level," and that he was being placed on a 90-day Performance Improvement Plan.  (DEX A at 106;  Attachment 8 to DEX E).  This letter stated: "Employees have stated that they are treated in a condescending or degrading manner as though they work on a production line and that you do not like women or people of color.  It was reported your actions are intimidating and threatening."  (*Id.*).

Plaintiff testified that Ms. Olivarez told him that she was implementing the PIP as a result of what had happened in May 2011, and that once he got through the PIP, that would be the end of the consequences for the May 2011 incident. (Woosley Dep. at 50, Pltf's Ex. 2, ECF No. 39-2).  The effective date of the PIP was May 14, 2012.  (*Id.*).[7]  Plaintiff successfully completed the PIP on August 14, 2012.  (DEX H ¶¶ 20 and 24; DEX A at 108).  Plaintiff's placement on this PIP was neither a disciplinary action nor an adverse action as defined in SBA's Standard Operating Procedure 37 52 2 "Discipline and Adverse Actions."  (Dex H ¶ 28).  Plaintiff testified that, as a result of being placed on the PIP, he did not lose any pay or benefits, and his grade remained the same.  (DEX A at 109).  His status as district director was intact.  (*Id*. at 109-110).[8] Plaintiff successfully completed the PIP.  (DEX A at 108).  Plaintiff did not initiate contact with an SBA EEO Counselor within 45 days of his placement on the PIP.  (DEX A at 52).

### 5.  Denial of Within-Grade Increase ("WIGI")

On September 7, 2012, Ms. Olivarez issued a latter to Plaintiff, informing him that his WIGI due on September 9, 2012, was being denied.  (DEX A at 54).  Plaintiff did not initiate contact with an SBA EEO Counselor within 45 days of his receipt of the denial letter.  (*Id.*).

---

[7] Plaintiff contends that Mr. Cornelius told him that he would investigate why the PIP issued, and would have it withdrawn (Woosley Dep. at 71, Pltf's Ex. 2, ECF No. 39-2), but that this never happened (*Id.* at 42).  Mr. Cornelius denies that he told Plaintiff these things (DEX B ¶ 17).

[8] In his affidavit, Plaintiff stated that the issuance of the PIP rendered him ineligible for a within grade increase ("WIGI"), resulting in the denial of a raise of approximately $3,500 in September 2012. He did not become eligible for a WIGI until October 2013.  (Woosley Aff., Pltf's Ex. 1, ECF No. 39-1).

### 6.   **Seven-Day Suspension**

On October 4, 2012, Ms. Olivarez issued a letter to Plaintiff, proposing to suspend him for fourteen (14) calendar days for engaging in behavior unbecoming a government employee. (DEX A at 127;  Attachment 9 to DEX E).   Plaintiff responded to the proposed action on October 7, 2012.  (DEX B ¶ 21).   After reviewing his response, Mr. Cornelius, the deciding official for the proposed action, believed that Plaintiff did engage in the behavior upon which the suspension was based – i.e., the May 4, 2011 incident.   (*Id.*  ¶ 22).[9]   In addition to reviewing Plaintiff's response, Mr. Cornelius relied upon the Management Inquiry, and the executive summary[10] of some of the information that concurred with the Management Inquiry.   (Cornelius Dep. at 40, Pltf's Ex. 3, ECF No. 39-3).   He "took it one step further," called Plaintiff, and asked him some questions about the incident.  (DEX B ¶ 22).  Plaintiff acknowledged that the incident had occurred.   (*Id.*).[11]   In making his decision, Mr. Cornelius relied on Plaintiff's admission as well.   (Cornelius Dep. at 40, Pltf's Ex. 3, ECF No. 39-3).   Mr. Cornelius found there to be overwhelming evidence to suggest to him that Plaintiff did in fact engage in this unprofessional behavior (DEX B ¶ 23) and that it was serious in nature and deserved disciplinary action.   (*Id.* ¶ 25).   He issued a decision sustaining the proposal to suspend on November 15, 2012, but because he was unaware of any prior reports of similar behavior by Plaintiff, he reduced the suspension to seven (7) days.  (*Id.*  ¶ 27).

---

[9] Other than the May 4, 2011 incident, no SBA employee ever gave Mr. Cornelius a specific example or description of any harassment by Woosley of another SBA employee.  (Cornelius Dep. at 20-21, Pltf's Ex. 3, ECF No. 39-3).

[10] This document is Attachment 1 to DEX F.

[11] In his deposition, Plaintiff testified that he never admitted to Mr. Cornelius that he had engaged in the conduct of which he had been accused.  (Woosley Dep. at 133-34, Pltf's Ex. 2, ECF No. 39-2).

### 7.  Plaintiff's EEO Complaint

On December 13, 2012, Plaintiff contacted the SBA's EEO office.  (Compl. ¶ 4).  He filed a Formal Complaint of Discrimination with the SBA's ODI&CR in January 2013.  (*Id.* ¶ 5).  The ODI&CR sent a letter to Plaintiff on March 15, 2013, acknowledging the receipt of his Formal Complaint and advising him of the issues accepted for investigation.  (*Id.* ¶ 5).  Plaintiff did not amend his Formal Complaint of Discrimination (DEX A at 87).  The ODI&CR issued its Final Agency Decision on December 31, 2013, finding no discrimination on all claims.

### B.  PROCEDURAL HISTORY

On March 28, 2014, Plaintiff filed his judicial complaint, entitled "Complaint for Damages from Violations of Title VII."  As noted above, this Complaint alleges disparate treatment due to reverse race and gender discrimination (Counts I and II), retaliation (Count III), and a hostile work environment (Count IV).

On April 1, 2015, Defendant moved for summary judgment as to all counts. (ECF No. 35).  Plaintiff's response brief was filed on April 27, 2015 (ECF No. 39), and Defendant's response brief, along with a Notice of Completion of Briefing were filed on May 21, 2015 (ECF Nos. 44 and 45).

## II.  LEGAL STANDARDS

### A.  SUMMARY JUDGMENT STANDARDS

In evaluating a summary judgment motion, the Court must view the facts and evidence in the light most favorable to Mr. Woosley as the nonmoving party.  *Morris v. City of Colo. Springs,* 666 F.3d 654, 660 (10th Cir. 2012).  "Summary judgment should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law.'"  *Felkins v. City of Lakewood,* 774 F.3d 647, 650 (10th Cir. 2014)(quoting Fed.R.Civ.P. 56(a)).  If a reasonable jury could return a verdict for the nonmoving party, summary judgment is inappropriate.  *Riser v. QEP Energy,* 776 F.3d 1191, 1195 (10th Cir. 2015).

A dispute is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way, and it is material if under the substantive law it is essential to the proper disposition of the claim.  *Becker v. Bateman,* 709 F.3d 1019, 1022 (10th Cir. 2013).  Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

### B.  TITLE VII STANDARDS

Title VII of the Civil Rights Act of 1964, as amended, declares it unlawful for an employer to "fail or refuse to hire, discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges or employment, because of such individual's race, color, religion, sex, or national origin. . ."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie claim of disparate treatment based on race or gender, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) his employer treated similarly situated employees differently.  *Juarez v. Utah*, 263 Fed.Appx. 726, 737 (10th Cir. 2008)(unpublished).  If a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action.  If the district court declines to dismiss a Title VII claim for failure to make a prima facie case and the defendant presents evidence of a legitimate business reason, the plaintiff must then be allowed to demonstrated that the defendant's offered reasons are a mere pretext for discrimination.

The Supreme Court has held that a prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577 (1978). For most plaintiffs, establishing a prima facie case is perfunctory, and liability turns on whether the defendant's stated explanation for the adverse employment action is pretextual.

In this case, Plaintiff claims reverse discrimination. Such a claim implicates heightened standards to establish a prima facie case of discrimination under the *McDonnell Douglas* paradigm. In such a case, where the plaintiff belongs to a majority group -- while males -- the Tenth Circuit has modified the first prong of the prima facie case: "[I]n lieu of showing that he belongs to a protected group, [a plaintiff may] establish background circumstances that support an inference that the defendant is one of the unusual employers who discriminate against the majority." *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). In the alternative, a majority plaintiff may establish a prima facie case by showing direct evidence of discrimination, or by indirect evidence sufficient to support a reasonable probability that, but for the plaintiff's status, the challenged employment decision would have favored the plaintiff. *Id.* at 590. When the plaintiff uses this alternative method, the plaintiff does not benefit from the presumption of intentional discrimination, which arises only when plaintiff's evidence meets the modified four-step prima facie case. *Id.* In other words, it is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must "allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status, the challenged decision would not have occurred." *Id.* If a reverse discrimination plaintiff meets his burden of establishing a prima facie

case, the remainder of the *McDonnell Douglas* paradigm applies.  *Taken v. Okla. Corp. Comm.*, 934 F.Supp. 1294, 1298 (W.D. Okla. 1996).

Secondly, Plaintiff has alleged that he was subjected to a hostile work environment.  To establish a sexually or racially hostile work environment, Mr. Woosley must show (1) that he was discriminated against because of his gender or race; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment and created an abusive working environment.  *Morris,* 666 F.3d at 663.  In assessing whether conduct was sufficiently severe, the Court examines the "totality of circumstances, and consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 664 (brackets and internal quotation marks omitted).  The environment must be "objectively and subjectively hostile or abusive." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998).

Thirdly, Plaintiff has alleged a claim for retaliation.  Title VII prohibits retaliation against employees for opposing any practice made unlawful by Title VII, or for asserting a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, Plaintiff must show that:  (1)  he engaged in protected opposition to discrimination;  (2) he suffered an adverse action that a reasonable employee would have found material[12];  and (3) a causal nexus exist between the protected activity and the materially adverse action.  *Timmerman v. U.S. Bank,*

_____

[12] The Tenth Circuit previously held that a prima facie case of retaliation under Title VII requires an "adverse employment action," but the Supreme Court has rejected that standard.  *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  Instead, to prevail on a Title VII retaliation claim, a plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* at 61 *(quoting Rochon v. Gonzales,* 438 F.3d 1211, 1217-18 (C.A.D.C. 2006)(quoting *Washington v. Ill. Dep't of Revenue,* 420 F.3d 658, 662 (7th Cir. 2005)).

*N.A.*, 483 F.3d 1106, 1123-24 (10ᵗʰ Cir. 2007).  The Tenth Circuit also requires Plaintiff to show

that the management personnel responsible for making the decision had knowledge of Plaintiff's

protected acts.  *Id*.


### III.  ANALYSIS

#### A.  APPLICATION OF EXHAUSTION PRINCIPLES

"It is well settled that federal employees must exhaust their administrative remedies

before filing suit in federal court for employment discrimination." *Conkle v. Potter*, 46 F. App'x

950, 952 (10th Cir. 2002) (unpublished).[13]    "[T]he obligations of federal employees are

somewhat different from those of other workers" with respect to the Title VII administrative

process.  *Green v. Donahoe*, 760 F.3d 1135, 1139 (10th Cir. 2014), *cert. granted*, 135 S,Ct, 1892

(U.S. Apr. 27, 2015) (No. 14-613). At issue in this case is the initial step of the administrative

process:   the requirement that an aggrieved federal employee initiate contact with an Equal

Employment Opportunity (EEO) counselor in the employee's agency "within 45 days of the date

of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of

the effective date of the action" in order to try to informally resolve the matter.  *See* 29 C.F.R §

1614.105(a)[14]; *see Green*, 760 F.3d at 1139-40 (detailing steps in administrative process for

---

[13] Unpublished opinions are not precedential but may be cited for their persuasive value. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 n.2 (10ᵗʰ Cir. 2015); 10ᵗʰ Cir.R.32.1.

[14] The applicable regulation states in full that:

    Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and

federal employees). The Tenth Circuit has stated that a Title VII claim is untimely where the aggrieved employee failed to contact an EEO counselor within 45 days of the alleged discriminatory act. *See, id.* at 1142 (holding Title VII claim was untimely where USPS employee failed to contact the agency's EEO counselor within 45 days after alleged discriminatory acts occurred); *Mayberry v. Envtl. Prot. Agency*, 366 Fed.Appx. 907, 911 (10th Cir. 2010) (unpublished)(holding that plaintiffs failed to exhaust their failure to promote claims where they did not meet with, or otherwise informally raise this claim with an EEO counselor).  However, "the untimeliness of an administrative claim, although an exhaustion issue, is not jurisdictional." *Green*, 760 F.3d at 1140. Consequently, compliance with the 45 day time limit "may be tolled in the appropriate circumstances." *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).

     In this case, Plaintiff alleges that his claims for disparate treatment due to reverse gender and race discrimination, retaliation, and hostile work environment are based on the following five discrete acts: (1) the poor FY2011 annual performance review issued on November 14, 2011; (2) a letter of warning issued on February 13, 2012; (3) placement on a ninety-day performance improvement plan on May 14, 2012; (4) denial of a within-grade pay increase on September 7, 2012; and (5) a seven-day suspension that Plaintiff was notified of on November 15, 2012 and that he served from November 26, 2012 to December 2, 2012.  It is undisputed that Plaintiff first contacted SBA's EEO office on December 13, 2012. (Mot. Summ. J at 8; *see also* ECF No. 35-18).  For purposes of determining whether the foregoing alleged discriminatory acts were properly administratively exhausted prior to commencing suit, the Court notes that

---

reasonably should not have  known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

generally "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Green*, 760 F.3d at 1140.  In addition, the "applicable administrative deadlines run from the time of the discriminatory act, not from the time of a later, inevitable consequence of that act." *See Conkle*, 46 Fed.Appx. at 952.

Although a failure to initiate contact is not jurisdictional and subject to equitable tolling, an unexcused failure precludes suit in federal court. *Id.* at 1142. The Supreme Court stated in the *Morgan* case that each "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  Each discrete act starts a new clock requiring the timely filing of an administrative charge for each act. *Id.* at 113.

As Plaintiff initially pled in his complaint and as he acknowledges in his brief, he failed to contact an EEO counselor within forty-five days of the first four acts detailed above. (Compl. ¶ 7; Resp. Br. at 18-20).  In its motion for summary judgment, SBA argues that Plaintiff's Title VII claims, to the extent they are based on the first four acts listed above, are untimely because Plaintiff failed to exhaust his administrative remedies by contacting an EEO counselor within 45 days of each of these acts. (Mot. Summ. J. at 14-19).  SBA further contends that there is no basis for equitable tolling of the 45 day time period with respect to each of these four acts. (*Id.*).

Plaintiff's primary argument in his response brief is that the acts are subject to equitable tolling due to the alleged conduct of Mr. Cornelius and Ms. Olivarez. (Resp. Br. at 18-19). Alternatively, Plaintiff appears to argue that some of the acts—specifically, the FY2011 performance review, the performance improvement plan, and the denial of the pay increase— were actually properly exhausted because he incorporated and referenced these acts in his written

16

response to the proposed notice of suspension that was issued to him by Ms. Olivarez in late 2012, a few months before he first contacted the EEO office. (*Id*. at 19)

Before turning to the parties' specific arguments, the Court briefly summarizes our circuit's case law on equitable tolling. Equitable exceptions to Title VII time limitations, including equitable tolling, "have been narrowly construed" in this circuit. *See Harms v. Internal Revenue Serv.*, 321 F.3d 1001, 1006 (10th Cir. 2003). The Tenth Circuit has generally recognized equitable tolling of Title VII time limitations only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period. *Biester v. Midwest Health Services*, *Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996). For instance, equitable tolling may be appropriate where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts. *Id.* Likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights, the Tenth Circuit will permit tolling of the limitations period. *Id.* Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's deliberate design or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge. *Al-Ali v. Salt Lake Comm. College*, 269 Fed.Appx. 842, 847 (10th Cir. 2008)(unpublished).

The parties do not dispute that Plaintiff timely contacted an EEO counselor within 45 days of his seven calendar day suspension; consequently, the Court need not separately address this act in its exhaustion analysis. However, the Court will address whether equitable tolling is applicable with respect to each of the earlier four alleged discriminatory acts.

### 1.  Claim 1 is Not Time Barred

Plaintiff's FY2011 annual performance review was completed on November 14, 2011, by Ms. Olivarez and acknowledged by Plaintiff on December 6, 2011. (Pltf's Ex. 12, ECF No. 39-12). It is undisputed that Plaintiff did not contact an EEO counselor within 45 days of the issuance of the performance review. Plaintiff contends that this claim should be equitably tolled due to alleged representations Mr. Cornelius made to him during a phone conversation in November 2011 regarding the poor annual performance review. (Resp. Br. at 18-19).  Plaintiff claims that he informed Mr. Cornelius during this conversation that he believed he was being treated unfairly in the review and sought Mr. Cornelius's "counsel on what [he] should do about it." (DEX A at 40).  According to Plaintiff, Mr. Cornelius told him that there was a management review in process, that he believed the poor performance rating was related to the management review, and that he then asked Plaintiff "to wait until the review was completed before [Plaintiff] took any action." (*Id.*).  Plaintiff additionally claims that Mr. Cornelius "committed to [him] that he would look at it [the FY2011 review] once the management review was complete and determine if he thought any modification [was] appropriate." (*Id.*) Plaintiff also relies on the EEO counselor's report which referenced an interview of Mr. Cornelius by the EEO counselor, during which Mr. Cornelius indicated that he had spoken with Plaintiff regarding the FY2011 annual review and that while he did not recall Plaintiff indicating that he was planning to file an EEO report, Mr. Cornelius did inform Plaintiff that "he wanted to see the results of the management inquiry report before addressing his rating [in the FY2011 performance review]."[15]

---

[15] The Court acknowledges that both parties rely on out-of-court statements and third-party recollections of the conversation that allegedly occurred between Plaintiff and Mr. Cornelius regarding the FY2011 annual performance review. Neither party has raised admissibility issues regarding the record evidence in their briefing on this issue.

(Pltf's Ex. 7, ECF No. 39-7).  In his declaration, Mr. Cornelius denies having a conversation with Plaintiff in November 2011 regarding the annual performance review. (DEX B ¶ 9).

It is clear to the Court that there are disputed issues of fact regarding whether a conversation occurred between Plaintiff and Mr. Cornelius in late 2011, and what, if any, representations were made by Mr. Cornelius to Plaintiff during the conversation.  Furthermore, Plaintiff testified that Human Resources Specialist Kendall Gamber told him that there was no time limit during which he could contest his rating.  In light of these contested issues of material fact, the Court concludes that there is a basis for equitable tolling, insofar as the FY 2011 Annual Performance Review is concerned.  A jury could find that this conduct by Mr. Cornelius and Mr Gamber rose to the level of active deception, justifying equitable tolling of the limitations period. *Biester,* 7y F.3d at 1267.   Accordingly, Plaintiff's claims arising from the poor annual performance review will be considered in the Court's analysis of Defendant's motion for summary judgment.

### 2.  Claims 2, 3 and 4 are Time Barred

The letter of warning was issued to Plaintiff on February 13, 2012. (Attachment 7 to DEX E).  As noted earlier, Plaintiff did not contact an EEO counselor until several months later on December 13, 2012. SBA contends in its motion for summary judgment that there is no basis for equitable tolling for any claims arising from the issuance of the letter of warning. (Mot. Summ. J. 16) Plaintiff has failed to respond to this argument; indeed, he failed to even reference the letter of warning in his arguments on equitable tolling. (Resp. Br. at 18-20).  It was Plaintiff's burden to establish sufficient grounds for equitable tolling. *See Dumas v. Proctor and Gamble Mfg. Co.*, 453 Fed.Appx. 819, 821 (10th Cir. 2011) (unpublished). Plaintiff has failed to point to any conduct on the part of SBA employees that would warrant equitable tolling. Thus, any

claims arising from the letter of warning were not administratively exhausted and will not be considered by the Court in its analysis of Plaintiff's claims.

Plaintiff was placed on a 90-day performance improvement plan by Ms. Olivarez, effective on May 14, 2012.  (Attachment 8 to DEX E).  Plaintiff did not contact an EEO counselor within the required 45-day time period because, as he explained in his deposition, he was led to believe by Ms. Olivarez that it "would be the end of the consequences for the May 2011 event." (DEX A at 50). Plaintiff also claims that he spoke with Mr. Cornelius at a conference in Tampa in July 2012 regarding his placement on the performance improvement plan, and that Mr. Cornelius told Plaintiff at that time that he would have the performance improvement plan stopped. (*Id.* at 42 and 53).  Mr. Cornelius denies having this conversation with Plaintiff. (DEX B ¶ 17)

Even assuming that Plaintiff was lulled into inaction based on the alleged conduct by Ms. Olivarez and Mr. Cornelius from May through July 2012, the Court concludes that Plaintiff has not articulated any reason for his continued delay in contacting an EEO counselor after that time period. In fact, Plaintiff complied with the requirements of the performance improvement plan and was notified on September 18, 2012, that he had successfully completed the plan as of August 14, 2012. (DEX H ¶¶ 24-27).  However, Plaintiff did not contact an EEO counselor until months later. The Court determines that Plaintiff has not exhausted his administrative remedies for his placement on the performance improvement plan and this action will not be considered by the Court in its analysis of Plaintiff's claims.

Plaintiff was denied a within-grade pay increase on September 7, 2012. (Attachment 10 to DEX E).  Plaintiff did not initiate contact with an EEO counselor within 45 days of the denial. In his deposition, Plaintiff indicated that he did not initiate contact because he believed the denial

was going to be temporary. (DEX A at 54).  Plaintiff further stated that no one told him not

initiate contact with the EEO office. (*Id.* at 55).  SBA contends in its motion that there is no basis

for equitable tolling of the 45-day time period with respect to the denial of the pay increase

because Plaintiff failed to allege that there was any active deception by any SBA employees

related to the denial or other conduct that lulled Plaintiff into inaction. The Court agrees that

Plaintiff has failed to meet his burden of establishing equitable tolling. *See Al-Ali*, 269 Fed.Appx.

at 847.  Any claims arising from the denial of the within-grade pay increase have not been

administratively exhausted and will not be considered by this Court.[16]

### 3.  Seven Calendar Day Suspension Was Properly Exhausted

As noted above, it is undisputed that Plaintiff timely contacted an EEO counselor within

45 days of his seven calendar day suspension, and accordingly this suspension will be considered

by the Court in its analysis of Defendant's motion for summary judgment.

### B.  REVERSE DISCRIMINATION CLAIMS  (Counts I and II)

As noted above, Plaintiff's Complaint contains allegations of reverse racial and gender

discrimination.  He is a male Caucasian.  He argues that the SBA decision makers who took

adverse employment actions against him are female and non-Caucasian and that their acts and

failures to act demonstrate a discriminatory and hostile animus aimed at him because of his race

and gender. He claims that he was treated differently from similarly-situated non-Caucasian

female SBA employees, that females received better treatment than he did, and that but for his

male gender, he would not have suffered the adverse employment actions involved in this

---

[16] The Court is not convinced by Plaintiff's alternate argument that any claims arising from the
FY2011 review, the performance improvement plan, and the denial of the within-grade pay increase were
administratively exhausted simply because Plaintiff referenced them in his response to the initial
suspension notice issued by Ms. Olivarez. (Pl.'s Resp. Br. at 19-20) Each of the acts constitutes discrete
conduct for which Plaintiff was required to exhaust his administrative remedies. *See Green*, 760 F.3d at
1140 (stating that "each discrete incident of alleged discrimination or retaliation constitutes its own
unlawful employment practice for which administrative remedies must be exhausted.")

lawsuit.   The adverse actions upon which he relies are the same five employment actions mentioned throughout this case.

Defendant argues in her motion for summary judgment that all employment actions except for the seven calendar day suspension are not adverse employment actions and/or are time barred.   She contends that the seven calendar day suspension is the only action properly considered by this Court, and that it was not an action done for discriminatory reasons but rather, because Mr. Cornelius honestly believed his reasons underlying the suspension to be justified by legitimate business reasons, and that he acted upon this belief in good faith, thereby defeating any pretext argument.

Despite Plaintiff's attempts to base his reverse discrimination claim on five separate acts of alleged disparate treatment, three of these have been deemed by the Court to be time barred. Accordingly, only the FY2011 Annual Performance Review and the seven calendar day suspension remain eligible for consideration in the Court's analysis of this claim.

### 1. Adverse Employment Action Analysis

The Court must initially determine whether or not Plaintiff has established a prima facie case of reverse discrimination.   The second prong required to establish a prima facie case of disparate treatment is that the plaintiff suffered an "adverse employment action." *Sanchez v. Denver Public Schools,* 164 F.3d 527, 531 (10th Cir. 1998).  Although the Tenth Circuit employs a liberal definition of "adverse employment action," it has repeatedly stated that not everything that makes an employee unhappy is actionable. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005).  If that were not the case, "minor and even trivial employment actions that an irritable chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.*  The Tenth Circuit takes a case-by-case approach, examining the unique

factors relevant to the situation at hand. *Sanchez,* 164 F.3d at 532. Conduct is adverse if it results in a significant change in the employment status, or alters the employee's compensation, terms, conditions or privileges of employment. *See Lujan v. Johanns,* 181 Fed.Appx. 735, 737 (10th Cir. 2006)(unpublished). It is noteworthy that the Tenth Circuit has expressly refused to limit the term to simply "monetary losses in the form of wages or benefits." *Sanchez* 164 F.3d at 532; *see Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986-87 (10th Cir. 1996)(holding that filing of false criminal charges constituted an "adverse employment action" because such an act causes "harm to future employment prospects."). Specifically, *Berry* held that acts that carry a significant risk of humiliation and damage to reputation, and a concomitant harm to future employment prospects may constitute adverse action. *Id*.

In determining whether or not Plaintiff has established a prima facie case, the Court will examine Plaintiff's two remaining employment actions, in light of these guidelines.

### a. The FY2011 Annual Performance Review

Ms. Olivarez rated Plaintiff's FY2011 performance as "below expectations." In her Declaration, she stated that she gave him this rating because after her site visit, she believed he was not providing good leadership in the office. Based on employee complaints about his management style and his behavior, she rated him very low on the elements of leadership, people management responsibilities and district director job specifics. (DEX E ¶ 35). She stated that she noted in her remarks that Mr. Woosley needed "to take a stronger leadership role in developing an environment that creates and gives more support to the employees in a positive manner," and that "overall, John's performance is a Below Expectations because he has fail[ed] to meet his leadership expectation[s] as a District Director and people management skills since he is not able to work very effectively with the staff." (*Id.* ¶ 36). Further, she stated that her

decision to issue Mr. Woosley a "2" for his fiscal year 2011 rating was based on her view of his performance and was not motivated by his race, color, gender, or his participation in any alleged prior EEO activity.  (*Id.* ¶ 39).

Plaintiff makes no argument that he experienced altered responsibilities, benefits, employment status, compensation, or in the terms, conditions or privileges of his employment, as the result of this review.

The Court has been unable to locate a copy of Plaintiff's Final Performance Review in the record.  This absence of this critical evidence makes the Court's analysis more difficult. According to Mr. Woosley's deposition on page 38, he "believes" it was an attachment to an email.

Based on the descriptions of this communication by Ms. Olivarez and by Plaintiff, this rating can be analogized to a written warning.  A written warning will only constitute an adverse action "if it effects a significant change in the plaintiff's employment status." *Anderson v. Clovis Municipal Schools,* 265 F3d.Appx. 699, 704-05 (10th Cir. 2008)(unpublished), *citing Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006).  There is no proof that this rating demoted Plaintiff, altered his pay or responsibilities or changed his employment status, compensation, terms, conditions, or privileges of employment in any way.  There is no proof that this rating caused harm to Plaintiff's future employment prospects, nor can such an inference reasonably be made.

To give rise to an actionable discriminatory act, an employment action must be sufficiently adverse.  It is part of Plaintiff's prima facie case to establish that this rating was an adverse employment action.  The Court concludes that Plaintiff has failed to prove that this FY2011 Annual Performance Review is an adverse employment action sufficient to support a

disparate treatment claim.   Accordingly, it will not be considered in the disparate treatment analysis.

### b.  Seven Calendar Day Suspension

Although Plaintiff has not affirmatively established this fact, for purposes of this analysis, the Court will assume that Plaintiff's seven day suspension was without pay, and thus was an action that affected his compensation.   Accordingly, the Court concludes that this suspension constituted an adverse employment action.

### 2.  Reverse Discrimination Analysis

For reasons stated above, only Mr. Woosley's suspension remains in this case as an adverse employment action sufficient to support a prima facie claim.   Essentially, there are three ways Plaintiff can meet his burden of proof for a reverse discrimination claim:   (1) direct evidence of intentional discrimination; (2) indirect evidence under the *McDonnell Douglas* framework; or, (3) indirect evidence sufficient to support a reasonable probability that "but for" plaintiff being a Caucasian male, the challenged employment decision would have favored him. *Gallo-Loeks v. U.S. West Comm., Inc.*, 57 Fed.Appx. 846 (10th Cir. 2003)(unpublished) (discussing the three ways to meet a prima facie case in a reverse discrimination case).   If a reverse discrimination plaintiff meets his burden of establishing a prima facie case, the remainder of the *McDonnell Douglas* analysis applies.  *Taken,* 934 F.Supp. at 1298.

### a.  Prima Facie Case

Having carefully considered the evidence before it, the Court first finds that because there is no direct evidence of intentional discrimination, the Court will proceed to evaluate indirect evidence under the *McDonnell Douglas* framework.   The first prong of Plaintiff's prima facie case in his reverse discrimination claim requires a showing of "background circumstances that

support an inference that [SBA] is one of those unusual employers who discriminates against the majority," or a "historically or socially" favored group.  *Notari,* 971 F.2d 588-89.

Plaintiff has introduced no statistical or even anecdotal evidence that Caucasian men suffered adverse treatment *as a class* in the workplace.  In his affidavit, Plaintiff did testify that he "raised complaints of harassment and unfair treatment of myself by Yolanda Olivarez to Eugene Cornelius on several occasions.  Despite the fact that Mr. Cornelius stated to me that he would handle and look into these complaints, there is no evidence that he did anything at all with respect to addressing my complaints of harassment."  (Woosley Aff. ¶ 10, Pltf's Ex. 1, ECF No. 39-1).  Also, Plaintiff testified that he called Mr. Cornelius in November 2011 to tell him that he thought the FY2011 Annual Performance Review was unfair.  (Woosley Dep. at 37-41 and 78-79, Pltf's Ex. 2, ECF No. 39-2).  He also testified that in July 2012, he complained to Mr. Cornelius that Ms. Olivarez was treating him unfairly.  (*Id.* at 41-42).

The Court has carefully combed Plaintiff's Response Brief, to ascertain that it has not overlooked any evidence in this regard.  One of Plaintiff's arguments is that he did not discriminate on the basis of gender or race.  He asserts that he almost exclusively hired and promoted women and that he has been married to a Mexican national for a number of years.  (Resp.Br. at 14).  The Court fails to see the relevancy of these arguments.  Further, he argues about the lack of a fair opportunity to respond to allegations against him, and about the violation of procedures in the implementation of discipline taken against him, but he provides no evidence to establish that females and/or non-Caucasians were treated any differently, insofar as his suspension was concerned or otherwise.  Plaintiff has failed to establish any circumstances upon which the Court could infer that impermissible factors lead to Mr. Woosley's seven calendar day suspension.

In short, Mr. Woosley has not satisfied the first prong for his reverse discrimination case, by establishing background circumstances that support an inference that SBA is one of those unusual employers who discriminate against the majority. Plaintiff presented evidence that he felt he was being treated unfairly and harrassed by his female supervisor, Ms. Olivarez, and that it is his opinion that the suspension was a result of this unfair treatment. Plaintiff's evidence does not demonstrate a genuine issue of material fact as to background circumstances of discrimination as to Caucasian males as a group. Considering the evidence in the light most favorable to Plaintiff, the non-movant, the Court finds he has failed to meet the prima facie case applicable to reverse discrimination claims.

Finally, Plaintiff presents no indirect evidence sufficient to support a reasonable probability that "but for" plaintiff being a Caucasian male, the challenged employment decision would have favored him. While Plaintiff asserts that he was treated unfairly and harassed by a female supervisor, he provides the Court no evidence on which it can compare how a similarly-situated non-Caucasian and/or female employee was treated, in comparison to how Mr. Woosley was treated. He has produced no evidence that would support a reasonable probability that, but for his being a Caucasian male, he would not have received this seven calendar day suspension.

### b. Legitimate Business Reason for Suspension

The Court notes that even had Plaintiff satisfied his burden of proof in meeting his prima facie case, he would not have prevailed on the remaining burden shifting analysis under *McDonnell Douglas.* In evaluating whether or not Defendant has presented evidence of a legitimate business reason for issuing the suspension, the Court relies on evidence from Mr. Cornelius, the deciding official for this employment action. Mr. Cornelius believed that Plaintiff did engage in the behavior upon which the suspension was based, that is, the May 4, 2011

incident.  (DEX B ¶ 22).  In addition to reviewing Plaintiff's response to the proposed action, Mr. Cornelius relied upon the Management Inquiry, and an executive summary, which are outlined in considerable detail in Section I.A.1. herein.   Mr. Cornelius found there to be overwhelming evidence to suggest to him that Plaintiff did in fact engage in unprofessional behavior (*Id.* ¶ 23), that it was serious in nature and deserved disciplinary action.  (*Id.* ¶ 25).  Given Mr. Woosley's important position as SBA District Director for the New Mexico District Office and the detailed findings in the Management Inquiry of Plaintiff's poor management style upon which Mr. Cornelius relied in imposing the suspension, the Court finds that Defendant has presented sufficient evidence of a legitimate business reason for issuing the seven calendar day suspension.

### c.  Pretext for Discrimination

The final step of this analysis is for the Court to determine whether Plaintiff can demonstrate that Defendant's proffered business reasons for his suspension are but a pretext for discrimination.

Because Defendant's stated justification for Mr. Woosley's suspension is dissatisfaction with his performance, the Court pauses to acknowledge that the question of pretext is relatively narrow.   The Court does not "ask whether [the Defendant's] decision" was "wise, fair, or correct."  *Johnson v. Weld County, CO,* 594 F.3d 1202, 1211 (10th Cir. 2010).  Employers are permitted to make mistakes in personnel decisions, to make bad or unfair decisions, or to act impulsively or irrationally, so long as an employee's protected classification does not motivate the decision.  Thus, it is not sufficient for an employee like Mr. Woosley to show merely that the Defendant "got it wrong;" he must show that Defendant didn't really believe the proffered reasons for action, such that Defendant may have been pursuing a hidden discriminatory agenda.

28

An employee attempting to show that an employer's proffered explanation for an action is pretextual must show that the explanation is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude" it to be unworthy of belief. *Hinds,* 523 F.3d at 1197.

In his argument that Mr. Cornelius's explanation for the suspension is pretextual, Plaintiff relies on the following facts, which he contends show that the SBA ignored, violated or set aside its own policies and procedures in imposing the suspension upon him: (1) the suspension was not issued in a timely fashion; (2) Ms. Olivarez conducted no thorough inquiry prior to proposing his suspension; (3) Plaintiff was not provided an opportunity to respond to the allegations of wrong-doing; (4) the Decision Letter did not comply with specific factual requirements of the Standard Operating Procedure governing discipline; and, (5) Plaintiff denies admitting that he engaged in any wrong-doing when he spoke to Mr. Cornelius, and reasserts his belief that he did not engage in any misconduct. (Resp. Br. at 15-16). Plaintiff argues that SBA's allegedly non-discriminatory business reasons for taking an adverse employment action, may be shown to be pretextual in instances, such as this, where an employer violates its own policies, *citing Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1252 (10th Cir. 2006).

Relying on the undisputed facts and arguments set forth on pages 11-13 of the Reply Brief, the Court concludes that Plaintiff has failed to establish that the SBA violated its own policies and procedures in any material way, when it acted to suspend Plaintiff for seven calendar days. Furthermore, Plaintiff has not shown that there is the slightest inference or circumstantial evidence that this suspension was motivated by his gender or race. To the contrary, Mr. Cornelius stated in his Declaration that he found there to be overwhelming evidence indicating that Plaintiff had engaged in unprofessional behavior, that it was serious in nature and deserved disciplinary action. (DEX B ¶¶ 23, 25). The Court concludes that Mr.

Cornelius honestly believed that Plaintiff engaged in the behavior based on the facts before him, and then acted in good faith upon his beliefs, thereby implementing this seven calendar day suspension for Plaintiff.  There is no factual basis for the Court to conclude that Defendant's proffered business reasons for this suspension were but a pretext for discrimination.

Accordingly, Defendant's motion for summary judgment on Counts I and II is hereby granted, and Plaintiff's claims for reverse gender and race discrimination are hereby **dismissed**.

### C.  HOSTILE WORK ENVIRONMENT ("HWE")  (Count IV)

Plaintiff's Complaint contains allegations of a hostile work environment. Specifically, he alleges that the five employment actions mentioned throughout this case constituted on-going workplace harassment and were sufficiently severe and pervasive to alter the terms and conditions of his SBA employment.

Defendant argues in her motion for summary judgment that Plaintiff's HWE claim fails due to a lack of evidence that he was subjected to an objectively abusive environment. Specifically, Defendant contends that Plaintiff's claim is based on actions taken from afar by Ms. Olivarez, relating to his performance or conduct at work, that there is an absence of proof of any offensive conduct, and that the environment simply involved monitoring and job stress, resulting in actions that Mr. Woosley believes were unfair or unwarranted.  Defendant argues that none of these acts constitutes extreme or patently hostile conduct.  Defendant refers the Court to Plaintiff's deposition, where he admitted that he was not subjected to offensive utterances, taunts, insults, ridicule, jokes or threats of physical harm -- the type of conduct necessary to establish the existence of a hostile work environment.  (DEX A at 180-181).  The Court notes that Plaintiff's Response Brief contains no reference to a hostile work environment claim. It

appears that Plaintiff has abandoned this claim; in any event, he has failed to set forth evidence in support of an HWE claim.

Despite Plaintiff's failure to comply with D.N.M.LR-Civ. 56.1(b), the Court has reviewed the court record to determine if it contains sufficient proof of a hostile work environment on which a jury could rule in favor of Plaintiff, in which case summary judgment on this claim would be inappropriate. *Riser*, 776 F.3d at 1195.

Based on this review, the Court has concluded that even if the first prong of Plaintiff's burden of proof is assumed -- that Mr. Woosley was discriminated against because of his gender and/or race -- there is simply no proof that any discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment or created an abusive working environment. Plaintiff falls short of making a showing of pervasive or severe harassment. The totality of the circumstances merely shows supervisory discipline imposed upon Mr. Woosley, with which he disagrees.

Plaintiff was not subjected to anything that was physically threatening or humiliating, nor was he subjected to any offensive utterances or the type of requisite conduct spelled out above in Section II.B. Rather, the record reflects a work environment that exhibits the monitoring and job stress typical to the real world -- normal job stress that does not constitute a hostile or abusive work environment. *Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) There is no proof of an environment that is subjectively hostile or abusive. No reasonable jury could find that Defendant's conduct, described in the record, was so severe or pervasive as to alter the conditions of Plaintiff's employment, constituting a hostile work environment.

Accordingly, Defendant's motion for summary judgment on Counts IV is hereby granted, and Plaintiff's claim for hostile work environment is hereby **dismissed**.

### D.  RETALIATION CLAIM (Count III)

Mr. Woosley's Complaint alleges that after he participated in protected activity by reporting unfair treatment to SBA management, his supervisors took adverse employment actions against him that include but are not limited to:  (1) unjustifiable substandard performance evaluations; (2) denial of a pay increase; (3) placement on a performance improvement plan; (4) inappropriate disciplinary action; and, (5) the creation of a hostile work environment.  Paragraph 60 of his Complaint states that he participated in protected activity under Title VII when he reported to SBA management that he was being targeted and treated unfairly in the workplace. Throughout Count III, he refers to this as "unfair treatment."  (Compl. ¶¶ 60-62).

In his deposition, Plaintiff identified Mr. Cornelius as the person to whom he complained, stating that he spoke to him on two occasions, once in November 2011 and again in July 2012. (DEX A at 38-41).  During the first conversation, Plaintiff testified that he told Mr. Cornelius that he "had received his two rating for [his] 2011 performance and [he] was concerned about that, that [he] felt it was unfair. . . ." (*Id.*, p. 40).  During the second conversation, Plaintiff told Mr. Cornelius "that [he] felt that [he] was not being treated fairly, that [he] was being subjected to a level of hostility."  He then stated, "I'm not sure I used the word 'hostility,' but an unpleasant work environment that was affecting my ability to do my job. And I had mentioned to him during that meeting that I was on the PIP, which had started in May of 2012, and I told him that --- that the grounds for that did not appear fair to me and that the way it was being done didn't seem to comply with the way I understood the PIP was supposed to be carried out." (*Id.* at 41-42).

Defendant argues in her motion for summary judgment that these vague complaints to Mr. Cornelius do not constitute protected activity under Title VII, and that Plaintiff has therefore not satisfied the second prong of his burden of proof, as set forth in Section II.B. herein. Defendant contends that to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by Title VII.   In addition to her position that Plaintiff's actions did not constitute protected activity, based on a lack of content that his "unfair treatment" stemmed from unlawful racial or gender discrimination, Defendant contends that Plaintiff never conveyed his opinion that he was being unfairly treated to Ms. Olivarez, the person solely responsible for claims 1-4.

The Court agrees that the two conversations between Plaintiff and Mr. Cornelius, upon which Plaintiff relies, do not establish that Plaintiff engaged in protected opposition.   As the Tenth Circuit stated in *Hinds,* 523 F.3d at 1203, although no magic words are required, "to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful" by Title VII."   *Hinds* specifically held that general complaints about company management and one's own negative evaluation will not suffice.   *See generally Anderson v. Academy School Dist. 20,* 122 Fed.Appx. 912, 916 (10th Cir. 2004)(unpublished)("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or another category protected by Title VII) does not constitute protected activity and will not support a retaliation claim").   *See Davis v. James, et al.*, 597 Fed.Appx. 983, 987 (10th Cir. 2015)(unpublished)("Filing a complaint against an employer is protected by § 2000e-3(a) only if the complaint is about an employment practice made unlawful under Title VII").   "An employer cannot engage in unlawful retaliation if it does

not know that the employee has opposed or is opposing a violation of Title VII." *Peterson v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Plaintiff maintains that he made complaints that he was "targeted." While his Complaint at paragraphs 4 and 5 makes this allegation, there is no factual basis to support his allegation in the court record. In fact, there is no evidence in the record to suggest that Plaintiff made any complaints to the SBA based upon reverse gender or race discrimination. Plaintiff's generic complaints of unfair treatment do not constitute protected activity under Title VII's anti-retaliation provisions.

**WHEREFORE,** for the reasons stated herein, Defendant's Motion for Summary Judgment and Supporting Memorandum (ECF No. 35) is hereby **granted, resulting in dismissal of this case in its entirety.**

**IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**